IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

171      1
217     521

## Edward J. Berwind, who was Substituted for William J. Smith, v. William C. Williams and Joseph Clawson, Appellants.

*Contract—Real estate—Vendor and vendee—Trust—Possession.*

Plaintiff acquired the legal and equitable title to land of which defendant was in possession. When the sheriff was about to serve a writ to put plaintiff in possession, plaintiff and defendant entered into an agreement in writing by which plaintiff gave to defendant an option to buy the land for a certain amount, in which defendant agreed that if he did not pay the price named before the day fixed, he would move out, and to that end would authorize the sheriff to deliver possession to plaintiff. Defendant did not pay the amount within the stipulated time, and the sheriff executed the writ, and delivered possession to plaintiff. Immediately afterward plaintiff permitted defendant to move his goods back upon the premises and resume possession. Defendant offered in evidence certain declarations of plaintiff that all he wanted out of the land was his money and interest. Plaintiff, however, testified that when he bought the equitable title he gave express notice that he was buying for himself, and that he allowed defendant to resume possession because defendant had no other place to go during the winter, and that he was only allowed to resume possession on an agreement that he would go out at the end of the winter, or that, if he remained, he would pay rent to be fixed at that time. *Held*, that the evidence was insufficient to justify a chancellor in decreeing an equitable title in defendant.

Argued Oct. 9, 1895. Appeal, No. 173, Oct. T., 1895, by defendants, from judgment of C. P. Jefferson Co., Feb. T.,

1891, No. 71, on verdict for plaintiff.   Before STERRETT, C. J.,
WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.   Affirmed.

Ejectment for two tracts of land in Young township.   Before CLARK, J.

The facts appear by the charge of the court, which was as follows:

The parties to this suit are Edward J. Berwind, the plaintiff, and William C. Williams, the defendant.   The action is ejectment, brought by the plaintiff against the defendant to recover two pieces of land described in the summons in ejectment, one containing one hundred and seventy-five acres, more or less, and the other eighty acres.

The plaintiff claims he is the owner of the premises in dispute, and in support thereof has offered a certain judgment of M. J. Dinsmore, for use of J. M. Hadden, against James Williams and Wm. C. Williams, No. 122 of May term, 1882, debt $303.24, interest from October 11, 1882; also a fieri facias issued thereon to No. 80 of December term, 1885, together with the levy on the two pieces of land in dispute, and, I believe, another piece, which is not material to this case.   He offered the levy and the return of the sheriff showing a sale of the land to W. N. Hadden.   He also offered in connection with that the original judgment, No. 399 of May term, 1875, upon which the scire facias was issued to No. 122 of May term, 1882, together with the record papers and docket entries in the case.

In pursuance of the sale under the fieri facias a deed was made from Henry Chamberlin, sheriff, to W. N. Hadden, dated the 21st of December, 1885, acknowledged the same day, recorded July 28, 1886, in deed book 51, page 26, for the one hundred and seventy-five acres, one of the pieces in controversy; also another deed between the same parties, made and acknowledged at the same time, and also recorded July 28, 1886, in deed book 51, page 27.   The plaintiff also offered the deed of W. N. Hadden and wife to William J. Smith, dated 12th of June, 1886, acknowledged same date, recorded July 28, 1886, in deed book 51, page 27, for one hundred and seventy-five and eighty acres, the same land described in the plaintiff's writ in this case.   He also offered the deed of William J. Smith and wife to Edward J. Berwind, dated January 23, 1892, ac-

knowledged same date, recorded February 12, 1892, in deed book 63, page 392.

At this stage of the trial the plaintiff rested, and so far as the title goes upon the record these deeds all seem to be absolute, conveying all of this property so far as the interest, at least, of William C. Williams is concerned, and finally vesting it in the plaintiff here.

Upon part of the defendant there were offered judgments of Levi McGregor, for use of J. U. Gillespie, against Wm. C. Williams, No. 269 of May term, 1877, debt $993.69, interest from July 6, 1877, due July 6, 1878, entered July 16, 1877; also J. U. Gillespie v. Wm. C. Williams, No. 272 of May term, 1877; J. U. Gillespie, survivor, v. Wm. C. Williams, No. 270 of May term, 1877; also a fieri facias to No. 50 of February term, 1880. There were other offers in connection with these judgments and the fi. fa. showing the levy, the sale, and the return, and what was done with the money. The one hundred and seventy-five acre tract was purchased, under the fi. fa. No. 50 of February term, 1880, by J. U. Gillespie, for the sum of $1,300, and the eighty acre piece was also purchased by him, for $100; there were some other pieces of land sold at this same time and purchased by Mr. Gillespie.

In pursuance of the levy, sale, and purchase under this writ a deed was made by W. P. Steele, sheriff, to J. U. Gillespie, dated February 11, 1880, for eighty acres, one hundred and thirty-seven perches and allowance, more or less, in Young township, Jefferson county, this deed being recorded in deed book 39, page 509; also another deed was made by W. P. Steele, sheriff, to J. U. Gillespie, dated February 11, 1880, acknowledged February 12, 1880, recorded in deed book 39, page 511, for one hundred and seventy-five acres, more or less, in Young township, Jefferson county. Both those deeds were offered in evidence and there is no dispute as to them, being for the same land described in the summons in this case.

They were followed by an offer of a deed from J. U. Gillespie and wife to Wm. J. Smith, dated August 31, 1881, for the same two pieces of land, recorded in deed book 39, page 507, acknowledged August 31, 1881. Here the defendant alleges and has offered the evidence of witnesses to show that Wm. J. Smith agreed to take this deed and advance the money, some

$3,600, for the payment of the amount claimed by Gillespie. We have the testimony of J. U. Gillespie on that subject, in which he states that he had issued a possessory proceeding under the act to recover possession under the sheriff's vendee, and after obtaining judgment upon that on the docket of John T. Bell, a justice of the peace, they finally settled that matter and he leased the premises in dispute to Wm. C. Williams.  Some time after that, proceedings were had under the landlord's and tenant's act to recover the possession from Wm. C. Williams, and about the time of the hearing (we believe there was in fact judgment rendered upon that) Mr. Williams went to Wm. J. Smith to get some money, saying that he was going to make a tender to Gillespie of $500.  This is disputed, we believe, by Williams, as to Smith making the tender; but a portion of the money, $300, the plaintiff concedes was furnished by Williams, and Smith furnished the other portion.  Smith testifies that Williams told him Gillespie would not take it, would not accept it; but to the surprise of Smith, who appears to have made the tender himself, and the surprise of Williams, Mr. Gillespie accepted the $500 and, as Smith says, he found himself in a box and had to take the title to this land to secure himself. At all events at that time Mr. Gillespie agreed, although he said he had no recollection of having made an agreement of that kind, to receive the $500 and then to receive $500 yearly after that until the last payment, which would come about May first, 1887, of $600, and that he would draw up a contract to that effect.  In the meantime, however, and before this was done, it appears Williams and Smith had made some arrangement, got together in the office of A. J. Monks and talked the matter over and made arrangement that this title should be taken in the name of Wm. J. Smith, he to pay off the purchase money going to Gillespie, being at that time some $3600.  This was done and the deed made to Smith and, as Gillespie states, Smith stepped into his shoes and was to do whatever he (Gillespie) was to do.

Sometime after this, about the 28th of April, 1882, there was drawn a contract that has been offered in evidence and read in your hearing a number of times.  It is a straight contract for the sale and purchase of the lands in controversy for $3,600, payable as follows: "$500 now in hand, and $500 on

or before the first day of May, 1882; $500 on or before the first day of May, 1883; $500 on or before the first day of May, 1884; $500 on or before the first day of May, 1885; $500 on or before the first day of May, 1886, and $600 on or before the first day of May, 1887." On this contract there is the following receipt: "Received March 28, 1882, of parties of the second part the sum of $500, being in full of first payment within mentioned." This contract was between Wm. J. Smith of the first part and Wm. C. Williams and Anna M. Williams, his wife, of the second part.

Now up until this time and by virtue of this contract Wm. C. Williams and Anna M. Williams, his wife, would have an equitable title to the two pieces of land in controversy; whatever may have been the agreements before, whatever shape it may have been in, these parties were sui juris and made a contract and put it in such shape that the legal title of the premises remained in Wm. J. Smith and the equitable title in Wm. C. Williams and his wife, with $500 of a credit upon the consideration, which virtually left remaining $3,100. If you recollect the testimony of Mr. Williams, he said that if he had paid any more he would have had a receipt for it. Mr. Williams claimed that he paid $800, having paid $300 of the money used in making the tender and accepted by Gillespie; Mr. Smith says that was the whole amount paid at that time, including the $300; that Williams had paid either $200 or $300 to him (but the plaintiff concedes it was $300) to make this tender, and that he used $200 of his own money, and that when he came to make this receipt Williams paid $200, making $500, and that was all that was paid; but that will not be very material to the matter in issue, under our view of the case.

We then come to the judgment of M. J. Dinsmore, for use of Hadden v. Wm. C. Williams and others, a fieri facias having been issued on that judgment, a sale made of the property, and a deed (which we have already referred to) made by the sheriff to Wm. N. Hadden. This we believe was in December, 1885. There is no doubt under the evidence but what that deed vested an absolute and complete title, so far as any interest of Wm. C. Williams was concerned, in Wm. N. Hadden. If at that time by virtue of the deed made by Gillespie to Wm. J. Smith, Wm. C. Williams was the owner and holder of the legal title

through the money he had paid on the original purchase, in the proportion of $300 to $3,600, being a twelfth, and if he had at that time also an equitable title by virtue of the article of agreement of the 28th of April, 1882, it was all swept away by that sale, he was divested of all the title he had in the property and as well the title and equitable title his wife had in the property. The article of agreement was made between Wm. J. Smith and Wm. C. Williams and Anna M. Williams, his wife. When Mrs. Williams died all the title she ever had would pass to her husband or to his assignees or vendees. So that this sale wiped out every interest of Wm. C. Williams as well as that of his wife, who died we believe about the 20th of December, 1885. Hence by this deed made to W. N. Hadden by the sheriff there was a good title for all of the interest of Wm. C. Williams. It is not alleged we believe that there was any trust at that time, at least, that there was any promise upon the part of Hadden to make the purchase for Williams or anybody else; it was an absolute, direct purchase by him.

Afterwards we come to the purchase of Wm. J. Smith from W. N. Hadden. We have already referred to that deed. So far as the deed is concerned it is absolute and conveys the premises in dispute to Wm. J. Smith. But at this point the defendant contends there was an arrangement and agreement between Wm. J. Smith and him by which Smith was to take the title from Wm. N. Hadden and hold it for him, Williams. Wm. C. Williams testified, among other things, substantially, " I told Wm. J. Smith I had arranged to get the title from W. N. Hadden and pay him his money, $400, and thought it was my duty to come out and see him on account of our other business. ' Well,' he says, ' I am very glad you came out; Captain Hastings and I were talking and he advised me to take it for you, that if another party would get in betwixt us it might give us bother, and I agreed with him that I would take it for you provided you paid me six per cent interest.' I told him I was satisfied to do that. ' Well,' he says, ' I will take it for you.' I says, ' Mr. Smith, I didn't come out with the intention to ask you to do that, but since you have proposed to do it I would rather it would be in your hands as any other person's, our business is all together.' ' Well,' he says, ' I will take it, I would rather take it than leave it go into other hands.' Then

we made arrangements; I says ' Mr. Smith, so we understand one another fully, that there is no mistake. I want this Hadden title signed over to you to make you secure of your money, as the Gillespie title is in your hands.' He says, ' Well, that is all the security I ask.' Smith, Hadden and I afterwards met in Punxsutawney and the deed was made by Hadden to Smith according to our agreement. Hadden asked me if that was my request that the deed be made to Smith; I said it was; he said if it was not understood he would not convey to Smith; I told him it was the agreement between Smith and me to secure him for his money; Smith was there at the time."

We also have Mr. Smith's testimony in which he says he made no arrangement so far as purchasing this property for Mr. Williams; he says he purchased it for himself; that he told Williams he would not give him any more obligations nor would not make any other obligations, he was going to take care of himself. But we are asked on the testimony of Wm. C. Williams to say that there was a resulting trust—from the evidence offered upon part of Williams and some other witnesses as to Smith's declarations afterwards that all he wanted was his money and his interest. The question is whether it is sufficient to make a resulting trust; and it is a question of law for the court. We think under the evidence in the case and as shown on the part of the defendant that it is an express trust. Of course if we are wrong in this the party we wrong has his remedy, but we give you what we believe to be the law upon the facts in the case.

On the 22d of April, 1856, there was an act passed entitled " An act for the greater certainty of title and more secure enjoyments of real estate," the fourth section of which reads as follows:

" That all declarations or creations of trusts or confidences of any lands, tenements or hereditaments and all grants and assignments thereof shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, that where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed."

By virtue of that act there is no doubt but what there may be parol declarations of trust. There may have been a parol agreement to that effect, but in a case like this, as we view it, being an express agreement between the parties and being in parol, the only way to sustain that is to have it evidenced by writing, and we do not know of any evidence to establish that fact by writing—there is none in the case. Then, gentlemen, we come to the agreement that has been offered by the defendant, dated the 7th of January, 1887. But prior to this time, we think along the 8th of May, 1886, there were proceedings instituted before John St. Clair, a justice of the peace, for the purpose of recovering the possession of the premises by Wm. N. Hadden, the purchaser, his heirs or assigns. On that judgment was rendered for the premises and a writ was issued and placed in the hands of the sheriff to deliver the possession of the premises to the plaintiff. The sheriff executed this warrant, or, at all events, there was a writ issued on the 8th of November, 1886, directed to the sheriff of Jefferson county, Henry Chamberlin, and upon that writ he makes the following return :

"By virtue of this warrant, to me directed, I did on the 31st day of January, 1887, cause the within named plaintiff to have possession of his term within specified of the tenements within mentioned, with the appurtenances. Goods not levied on by order of plaintiff. Received my costs of plaintiff. So answers Henry Chamberlin, sheriff. Sworn and subscribed to before me this 14th day of February, 1887.

     "(Signed)      HENRY CHAMBERLIN, Sheriff.

         "SCOTT MCCLELLAND, Prothy."

That is the return made by the sheriff. Then we have the evidence of Smith, Williams, and sheriff Chamberlin. Williams was placed on the stand and said that the sheriff came there with the writ, that he set some things out,—some on the ground, some chairs, a sewing machine, etc., and some on the porch, and his version of the story is that Smith said it would just be the same that it was before; whilst Smith says that possession of the premises was delivered to him; also that he made a verbal lease of the same premises to Wm. C. Williams by which he could stay there until the 1st day of April and if he staid any longer than that it would have to be upon terms

for rent. You have the testimony of Chamberlin, who was a witness on part of the defendant, which in the main corroborates what Smith testified to; he said he made a delivery of possession of the premises to Wm. J. Smith, tells you how it was done, and that he heard Smith making a lease of the premises to Williams until the first day of April following, talked something about it being in the winter and very cold, etc., and it would be too bad to turn him out and he would just give him the privilege of staying there.

Before that time, on the 7th of January, 1887, an instrument of writing was drawn, which is as follows:

" This agreement made this 7th day of January, A. D. 1887, between Wm. J. Smith, vendee of W. N. Hadden, of the first part, and Wm. C. Williams, of the second part, parties to a landlord's warrant now in the hands of the sheriff of Jefferson County and issued November 8th, 1886, by John St. Clair, J. P., to said sheriff to give first party possession of two messuages therein described.

" Witnesseth, That said first party agrees with second party to give him two weeks from this date to pay him, the said first party, $6,000 for said lands described in said warrant now in the sheriff's hands; and if second party does not pay said amount in said two weeks, then at the expiration of that time he, the said second party, will remove from, deliver up, and quit the possession of said premises; and hereby authorize the said sheriff of Jefferson County to give the said first party the quiet and peaceable possession of said premises without any molestation or hindrance of him the said W. C. Williams, whatever, and that the said W. C. Williams will not be occupying the said premises or the buildings he now occupies situate on them on the 21st day of January, 1887.

" Witness our hands and seals the day and year above written.

" WILLIAM J. SMITH,  [Seal.]

" WILLIAM C. WILLIAMS,  [Seal.]

" Witness: ALEXANDER J. TRUITT."

Now, gentlemen of the jury, here we think is one of the principal questions in this case and it is for us to place a construction upon this instrument of writing. If this is a contract of sale and purchase between Wm. J. Smith and Wm. C. Wil-

liams for the consideration therein made, we would say that under the evidence in this case there should be a verdict for the plaintiff for the land described in the writ, to be released upon the payment of the purchase money, whatever that may be; it would be, if this were a contract of sale, $6,000 with interest from the 21st day of January, 1887, Wm. C. Williams being then in possession of the premises.

The construction of this contract is for the court. We may be in error but we do not believe we are; if we thought so we would decide differently. We think this is a mere option to buy; we are satisfied that under this contract of January 7, 1887, there could not be a recovery of the purchase money due against Wm. C. Williams. If Wm. C. Williams would have held over under this contract, which he claims to have done, —if he held over under this contract after the time he was to surrender possession, and Wm. J. Smith were to bring a suit to recover damages under this contract, all he could recover would be for the time Wm. C. Williams detained the possession of the premises after the time he was to surrender the same, he could not recover anything more. We are frank to confess that if he could recover any part of this purchase money of Williams then certainly the verdict ought to be the other way; it ought to be what we call a conditional verdict.

Plaintiff's point was as follows:

The court is respectfully requested to instruct the jury as follows: That under all of the evidence the defendants have shown no equitable title that a chancellor would enforce, and the verdict must be for the plaintiff for the land described in the writ. *Answer:* We answer this point in the affirmative. [2]

Defendants' points were as follows:

1. If the jury find from the evidence that an agreement existed between Williams and Gillespie by which the latter agreed in consideration of $3,600 to convey to the former the land in dispute, and said Williams agreed with W. J. Smith that he, Smith, would furnish to Williams $3,300 to pay Gillespie in pursuance of said agreement with Gillespie, and W. J. Smith for Williams and his stead made a tender of $500 of money to Gillespie, a part of which was furnished by Williams, and subsequently took from Gillespie a conveyance of the land in his own name in pursuance of the agreement aforesaid be-

tween Williams and Gillespie and for the benefit of Williams, subject to the payment of the purchase money he had loaned Williams, and afterwards set up title in his own name absolutely, it would give rise to a resulting trust in favor of Williams. *Answer:* We refuse this point under all the evidence in the case. We say that Smith performed his agreement and did what he agreed to do and that the article of agreement of the 28th of April, 1882, was a merger of all other agreements previous to that time. [3]

2. If the jury find from the evidence that W. N. Hadden made a deed for the land in dispute to W. J. Smith, and he accepted the conveyance in execution of a contract or bargain made with W. C. Williams for his own use, and Hadden would not have conveyed to Smith unless he had so accepted for the benefit of Williams, and the latter expended $25.00 to bring about said conveyance from Hadden, and the deed was only made in Smith's name to be held by him to secure the payment of the advance of $400 made by Williams, there would be a resulting trust in favor of Williams subject to the repayment by him to Smith of the money advanced by him. *Answer:* This point is refused under the evidence. [4]

3. That if the jury find the facts as stated in the first and second points of the defendants, and that the contract of 7th of January, 1887, between Williams and Smith was made in execution thereof, their verdict should be for the plaintiff for the land described in the writ, to be released upon the payment of $6,000 with interest thereon from the 21st of January, 1887, at such a reasonable time or times as the jury may fix. *Answer:* Refused. [5]

4. That under all the evidence in the case the verdict should be for the plaintiff for the land described in the writ, to be released on the payment of $6,000 with interest from January 21, 1887, at such time or times as the jury shall determine. *Answer:* Refused. [6]

[Our instructions to you are therefore, gentlemen of the jury, to render a verdict for the plaintiff for the land described in the writ in this case.] [7]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned,* among others, were (2–7) above instructions, quoting them.

*G. A. Jenks, Winslow & Calderwood* with him, for appellants.
—In an action of ejectment by a vendor against a vendee who
has not paid his purchase money, the rule that the plaintiff is
only entitled to have a conditional verdict and judgment, to be
released upon the payment of the balance of the purchase money
at such time as the jury may prescribe, is not altered by the
fact that much time has elapsed since the execution of the agree-
ment, and that the defendant has intimated his inability to pay:
Dixon v. Oliver, 5 Watt, 509; Eberly v. Lehman, 100 Pa. 542.

Neither law nor equity imputes laches to one in possession.
Even though he may be in default for nonpayment, his posses-
sion protects him against immediate rescission, and he will be
allowed time to pay: Richards v. Elwell, 48 Pa. 366.

Time is not of the essence of real contracts, unless made so
by the express agreement of the parties, or plainly indicated by
the attending circumstances: D'Arras v. Keyser, 26 Pa. 249;
Shields v. Miltenberger, 14 Pa. 76; Haverstick v. Erie Gas Co.,
29 Pa. 254; Irvin v. Bleakley, 67 Pa. 24; Hatton v. Johnston,
83 Pa. 219.

*H. Clay Campbell* and *C. Z. Gordon, W. M. Fairman* and
*A. J. Truitt* with them, for appellee.—Where parties have de-
liberately put their engagements into writing, in such terms as
import a legal obligation, without any uncertainty as to the
object or extent of their engagements, it is conclusively pre-
sumed that the whole engagement of the parties, and the extent
and manner of their undertaking, was reduced to writing, and
all oral testimony of a previous colloquium between the parties,
or of conversations or declarations at the time when it was
completed or afterwards, as it would tend in many instances
to substitute a new and different contract for the one which
was really agreed upon, to the prejudice, possibly, of one of the
parties, is rejected: 1 Greenl. Ev. 351; Sidney Scl. Furniture
Co. v. Warsaw School District, 130 Pa. 76.

Judgments against vendor and vendee, respectively, by their
different creditors, bind the right of each in the land, whether
legal or equitable: Chahoon et al. v. Hollenback, 16 S. & R.
425.

Judgments against the vendee bind only his equitable inter-
est, which is measured by the purchase money paid; and a pur-

chaser at sheriff's sale can take only such interest as the vendee held : Bradley v. O'Donnel, 32 Pa. 279 ; Wolfe's App., 110 Pa. 126 ; Kinports v. Boynton, 120 Pa. 306.

Since the act of June 8, 1881, P. L. 84, a written defeasance, signed by the grantee, but unacknowledged and unrecorded, though contemporaneous with the execution and delivery of a deed absolute on its face, will not be admitted to convert such deed into a mortgage : Sankey v. Hawley, 118 Pa. 30 ; Molly v. Ulrich, 133 Pa. 41 ; Kellum v. Smith, 33 Pa. 158 ; Kistler's App., 73 Pa. 393 ; Kimmel v. Smith, 117 Pa. 183.

Time will always be regarded as material, where there are not mutual remedies : Westerman v. Means, 12 Pa. 97 ; Silvester v. Born, 132 Pa. 467.

OPINION BY MR. JUSTICE MITCHELL, November 4, 1895 :

All prior equities of the appellant in the land, whether against Gillespie or Smith, were merged in the agreement of April 28, 1882, and thereupon Smith held the legal title and Williams an equity under the terms of that agreement. This equitable title of appellant was conveyed to Hadden by the sale under execution in 1885, and in June, 1886, Hadden conveyed it to Smith who thereby became vested with both the legal and equitable titles discharged of all claims by appellant. The agreement of January 7, 1887, between Smith and appellant is therefore the starting point of any present equity that appellant may have against Smith or his vendee the plaintiff. This is virtually conceded by the appellant's fourth prayer for instruction to the jury that they should render a verdict for the plaintiff to be released on the payment of six thousand dollars with interest from January 7, 1887. This agreement of January, 1887, is an agreement by Smith to sell on stipulated terms, but there is no agreement by Williams to buy. The only covenant that it contains on his part is that if he does not pay the price before the date fixed he will move out, and to that end he authorizes the sheriff to deliver possession to Smith. To explain this last provision it is only necessary to recall the situation of the parties at that time. Williams's equitable title had as already noted been sold by the sheriff to Hadden and conveyed by Hadden to Smith, thereby merging it in the legal title previously in Smith. Possessory proceedings before a justice

of the peace had resulted in a judgment against Williams, and the sheriff was present with a writ of habere facias possessionem. Williams therefore had no interest in the land, nothing but a bare possession which had been judicially declared at an end, and which the sheriff was about to terminate in fact. In this situation of affairs, the agreement gave him an option to buy, nothing more, for there was no obligation on his part to do so. It was not a bargain and sale of the land, either present or future, but a stay of proceedings in a writ of possession, upon conditions named, the performance of which was entirely optional on the part of Williams. To take advantage of the option he was bound to comply with its terms, and this it is conceded he never did.

Down to this point the case is perfectly clear, and shows that the appellant's entire interest in the land was terminated on January 21, 1887, when the sheriff executed his habere facias, and delivered possession to Smith. It appears however that the sheriff's delivery of possession was formal only, and after Williams's goods were set out, he was allowed by Smith to put them back again and continue his actual occupation of the land. He now claims that such occupation was a resumption of his former possession, and a reinstatement of his equitable title which had been divested by the previous proceedings. The burden of proof of such claim was of course upon him, and in support of it besides his own testimony that his original agreement with Smith had never been regarded by either party as abandoned, he produced several witnesses who testified to declarations by Smith, at times not very definitely fixed but apparently subsequent to January, 1887, that all he, Smith, wanted out of the land was his money and interest. Against this is the testimony of Smith that at the time of his purchase of the Hadden title he gave express notice that he was buying now for himself, his positive denial that after that purchase he ever made any agreement with Williams for the sale of the land except that of January 7, 1887, and his explanation of allowing Williams to continue his actual occupancy of the land after the sheriff's delivery under his writ of possession, on the ground that it being winter and Williams having no other place to go, he was allowed to remain until April on the express agreement to go out then or remain as a tenant at a rent to be fixed at

that time.   In this last matter Smith is corroborated by sheriff Chamberlin.   On this evidence no chancellor, even without reference to the act of April 22, 1856, P. L. 533, would feel justified in decreeing an equitable title in Williams.

The learned judge below having given the proper construction to the agreement of January, 1887, and there being no sufficient evidence before him to show any new equity in appellant, was right in directing a verdict for the plaintiff.

Judgment affirmed.